UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEMARKUS ADAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  No. 1:23-cv-02187-RLY-MG |
| | ) |
| CHADD TYLER, | ) |
| | ) |
| Defendant. | ) |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT

Plaintiff Demarkus Adams ("Mr. Adams"), pro se, alleges in this 42 U.S.C. § 1983 lawsuit that the defendant, Officer Chadd Tyler ("Ofc. Tyler"), violated his Eighth Amendment rights by using excessive force to restrain him after he disobeyed an order at Pendleton Correctional Facility ("Pendleton"). Mr. Adams also alleges that Ofc. Tyler violated his First Amendment rights by retaliating against him for filing grievances related to the excessive force incident. Ofc. Tyler has moved for summary judgment on the First Amendment claim and partial summary judgment on the Eighth Amendment claim. Dkt. 49. For the reasons explained below, the court **GRANTS** Ofc. Tyler's motion for summary judgment on the First Amendment claim and **DENIES** the motion for partial summary judgment on the Eighth Amendment claim, dkt. [49].

## I.
## Standard of Review

A motion for summary judgment asks the court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "An issue is 'genuine' only if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Whitaker v. Dempsey*, 144

1

F.4th 908, 916 (7th Cir. 2025) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The 'mere existence of a scintilla of evidence in support of the plaintiff's position' will not suffice." *Id.* When reviewing a motion for summary judgment, the court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up). A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because Ofc. Tyler moved for summary judgment under Rule 56(a), the court views and recites the evidence in the light most favorable to Mr. Adams and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73. All facts are undisputed unless noted.

The plaintiff, Mr. Adams, was incarcerated at Pendleton during the events at issue in this lawsuit. Dkt. 1 at 1 (Adams Complaint). The defendant, Ofc. Tyler, was a correctional officer at Pendleton. Dkt. 50-1 ¶ 3 (Tyler Aff.).

On July 2, 2023, at around 10:55 am, Mr. Adams was walking with other inmates from the dining hall towards K-dorm behind Ofc. Tyler. Dkt. 1 at 2. Ofc. Tyler testified that after hearing on the radio that the inmates were behind him, he turned around and advised the inmates to take the other sidewalk with the rest of the inmates from H Cell House. Dkt. 50-1 ¶ 4. Mr. Adams claimed in his verified complaint that Ofc. Tyler targeted him, aggressively telling him to take the long way back to the dorm. Dkt. 1 at 1; *see also* dkt. 64-1 at 1. The video evidence, which does not have audio, shows that Ofc. Tyler turned around and raised his hands forcefully, gesturing to Mr. Adams to turn the other way. Dkt. 50-2 (July 2, 2023 video at 4:35–4:40).

Mr. Adams asked Ofc. Tyler why he wanted him to take the longer route. Dkt. 1 at 4. Ofc. Tyler ordered Mr. Adams to turn around multiple times, but Mr. Adams did not comply. Dkt. 50-1 ¶ 5. Instead, Mr. Adams attempted to walk around Ofc. Tyler, who blocked the pathway with his body. Dkt. 50-2 at 4:40–4:45. Mr. Adams claims that Ofc. Tyler told him to "cuff up, motherfucker." Dkt. 1 at 4. Mr. Adams then asked Ofc. Tyler to call a sergeant or a lieutenant. *Id.* Ofc. Tyler ordered Mr. Adams to submit to handcuffs again and reached for the handcuffs. Dkt. 50-1 ¶ 6. Ofc. Tyler grabbed Mr. Adams's arms, but Mr. Adams pulled his arm away. *Id.* Ofc. Tyler then tackled Mr. Adams to the ground. Dkt. 50-2 at 4:50–4:55. The video shows Ofc. Tyler and Mr. Adams struggle on the ground for about ten seconds before another officer, Ofc. Quarrier, runs over and rolls Mr. Adams onto his back to cuff him. *Id.* at 4:55–5:26.

The video, however, does not clearly show what happened while Mr. Adams and Ofc. Tyler were on the ground. Ofc. Tyler testified that Mr. Adams struck him, causing a laceration above his

eye that required medical care. Dkt. 50-1 ¶ 8. Mr. Adams does not dispute that he hit Ofc. Tyler. Mr. Adams claims that after Ofc. Tyler grabbed him and forcefully pushed him to the ground, Ofc. Tyler threw "numerous blows with his fist and elbow" before Mr. Adams "[swung] back." Dkt. 63 at 5; *see* dkt. 1 at 2. Ofc. Tyler's blows gave Mr. Adams a black eye and severe lower back pain. Dkt. 1 at 2.

While Mr. Adams was still on the ground and before he had handcuffs on, Ofc. Tyler delivered a five-second taser drive to Mr. Adams's abdomen. Dkt. 50-1 ¶ 9. This ended up causing blisters to Mr. Adams's stomach. Dkt. 1 at 2. At some point, Ofc. Quarrier jumped on top of Mr. Adams, turned him over, and placed him in handcuffs. *Id*; *see* dkt. 50-2.

Mr. Adams testified that once Ofc. Quarrier cuffed him, Ofc. Tyler tazed him for a second time. Dkt. 1 at 5; dkt. 64-1 at 5 (Exh. C). Ofc. Tyler disputes that this happened, and the video does not clearly show what happened while Mr. Adams was still on the ground. Then, Ofc. Tyler "snatched" Mr. Adams off the ground, pushed, and grabbed him by the hair to get him to walk. Dkt. 1 at 3. The video does not confirm or deny this testimony. Ofc. Quarrier then told Ofc. Tyler to stop and go the other way. *Id.* Ofc. Tyler then walked away to fill out a use of force report. Dkt. 50-1 ¶ 13.

That same day—July 2—Ofc. Tyler wrote a use of force report as well as conduct report charging Mr. Adams with battery against staff. Dkt. 50-3 at 1 (Disciplinary hearing report showing that Ofc. Tyler wrote conduct report on July 2, 2023); dkt. 50-4 (Use of Force Report). During the disciplinary board hearing on September 14, 2023, nonparty Ofc. J. Miller found Mr. Adams guilty of assaulting staff and sentenced him to disciplinary segregation. *Id.* During the hearing, Mr. Adams commented that he hit Ofc. Tyler one time because Ofc. Tyler punched him first. *Id.* Ofc. Tyler was not involved in the disciplinary proceeding. Dkt. 50-1 ¶ 16.

4

Mr. Adams filed a grievance related to the incident on July 10, 2023, which was received on July 13. Dkt. 50-5 at 7–8. Grievance specialist T. McCorkle responded to the grievance on September 13, 2023. *Id.*

Ofc. Tyler does not recall speaking to Mr. Adams after the July 2 incident. Dkt. 50-1 ¶ 14. Ofc. Tyler was not aware that Mr. Adams filed a grievance or complained about him until he found out about this lawsuit. *Id.*, ¶ 17. In August of 2023, Ofc. Tyler transferred to Correctional Industrial Facility for unrelated reasons. *Id.*, ¶ 15.

### III.
### Discussion

**A. Eighth Amendment Excessive Force Claim**

Ofc. Tyler concedes that there is a genuine dispute of material fact as to whether he tazed Mr. Adams a second time, after he was already in handcuffs. Thus, he moves for partial summary judgment on whether his use of force to restrain Mr. Adams by taking him to the ground, tazing him for five seconds, and then picking him off the ground to escort him to the holding cell violated the Eighth Amendment.

The Eighth Amendment protects incarcerated people from cruel and unusual punishment, including excessive force by prison officials. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). This rule does not bar *de minimis* force unless the force is "of a sort repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 37−38 (2010) (per curiam) (cleaned up). Even if the force applied is not *de minimis*, it remains permissible if used "in a good-faith effort to maintain or restore discipline." *McCottrell*, 933 F.3d at 664 (cleaned up). But malicious or sadistic force—even if it does not cause a serious injury—is prohibited. *Id.* To distinguish between good-faith and malicious force, courts consider several factors, including:

> (1) the need for the application of force; (2) the relationship between the need

5

>and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Id.* at 663; *see also Whitley v. Albers*, 475 U.S. 312, 321 (1986). These factors are sometimes referred to as the "*Whitley* factors." Additionally, to survive summary judgment, a plaintiff must present evidence supporting "a reliable inference of wantonness in the infliction of pain." *Whitley*, 475 U.S. at 322.

Ofc. Tyler argues that his conduct, except for the first taser and the disputed second taser, was *de minimis*. Dkt. 51 at 7. Ofc. Tyler does not explain, however, why or how tackling someone, hitting them hard enough to cause a black eye, and "snatching" someone up off the ground is "*de minimis*." Though the record does not show that Mr. Adams's injuries were especially severe or life-threatening, he does not have to suffer "serious injury" to bring an Eighth Amendment claim. *Hudson v. McMillian*, 503 U.S. 1, 4, 10 (1992) ("Yet the blows directed at Hudson, which caused bruises, swelling, loosened teeth, and a cracked dental plate, are not *de minimis* for Eighth Amendment purposes."); *see also Hendrickson v. Cooper*, 589 F.3d 887, 890–91 (7th Cir. 2009) (finding that use of force was not *de minimis* where correctional officer "grabbed Hendrickson, threw him against a wall, slammed him onto the concrete floor, and pressed his knees into Hendrickson's back while another officer cuffed Hendrickson."). Here, the kind of force used and the injuries distinguish the facts in the record from cases where the Seventh Circuit has found that defendants used *de minimis* force. *See, e.g.*, *Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004) ("incidental bumping" during transfer of prisoner was *de minimis*); *Outlaw v. Newkirk*, 259 F.3d 833, 839 (closing cuff-port on hand and causing superficial hand injuries was *de minimis*); *Lunsford v. Bennett*, 17 F.3d 1574, 1582 (7th Cir.1994) ("Pouring a bucket of water over the head of a prisoner who is already standing ankle-deep in water, while it may be seen as unnecessary in

retrospect, is a minor use of force that does not offend the conscience."). Thus, the record does not show that the use of force was *de minimis* as a matter of law.

Ofc. Tyler also argues that his initial use of force was a "good-faith" effort to restore order. Dkt. 51 at 6; *see McCottrell*, 933 F.3d at 664. Mr. Adams disobeyed Ofc. Tyler's order to take the other sidewalk back to his dorm and pulled his arm away when he tried to cuff him. *Id.* Mr. Adams also attempted to walk around Ofc. Tyler. *Id.* Furthermore, Ofc. Tyler was in an open field, which exposed him to risk. *Id.* Thus, Ofc. Tyler argues that he used only the amount of force necessary to handcuff Mr. Adams. *Id.* Mr. Adams, in contrast, generally argues that the video and his injuries show that the use of force exceeded what was necessary to restrain him. Dkt. 63 at 11–14. Furthermore, the fact that Ofc. Tyler seemingly "targeted him" and acted aggressively at the beginning of the encounter warrants an inference that he intentionally sought to inflict pain. *See id.* at 14–16. Then, after Mr. Adams was cuffed, Ofc. Tyler continued to use force to "snatch him up" and grab his hair. *Id.*

Applying the factors from *McCottrell*, there is a genuine dispute of material fact as to whether Ofc. Tyler's use of force both before and after the disputed second taser was excessive. There was a need to use force when Mr. Adams disobeyed Ofc. Tyler. However, a reasonable jury could find a disconnect between the amount of force used and the need to subdue Mr. Adams based on the circumstances. Even before Mr. Adams hit Ofc. Tyler while they struggled on the ground, Ofc. Tyler's tackle could suggest that he did not make any effort to temper the severity of his response to Mr. Adams's disobedience. Furthermore, a reasonable jury could discern malicious intent because the video could be interpreted to corroborate Mr. Adams's testimony that Ofc. Tyler approached him in an aggressive and angry manner from the beginning—Ofc. Tyler turned around and raised his hands in a way that could be seen as angry. As such, a reasonable jury could find

that the first taser was excessive because Ofc. Tyler's initial take down created a need to escalate the amount of force required to subdue Mr. Adams. Last, the video does not confirm or contradict Mr. Adams's testimony that Ofc. Tyler used force to lift him up after he was in handcuffs and Ofc. Tyler does not directly dispute these facts in his affidavit.

All in all, the evidence in the record does not provide a basis for finding that, as a matter of law, Ofc. Tyler's actions were either *de minimis* or a good-faith effort to maintain order. Because the video is ambiguous and the parties have conflicting testimonies about what happened on the ground and afterwards, the issue cannot be resolved at summary judgment. Thus, the Court **DENIES** Ofc. Tylor's motion for partial summary judgment on the Eighth Amendment claim.

### B. First Amendment Retaliation Claim

Mr. Adams alleges that Ofc. Tyler retaliated against him by writing a false conduct report, which led to his placement in segregated housing. Dkt. 63 at 18. He also vaguely alleges that Ofc. Tyler retaliated against him for filing grievances. Dkt. 1 at 5. Both claims fail as a matter of law.

To succeed on a First Amendment retaliation claim, Mr. Adams must provide evidence showing that: (1) he engaged in protected First Amendment activity; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was a motivating factor in the defendants' decision to take the allegedly retaliatory action. *Taylor v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022). "The 'motivating factor' amounts to a causal link between the activity and the unlawful retaliation." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020) (quoting *Kidwell v. Eisenhauer*, 679 F.3d 957, 064 (7th Cir. 2012)).

#### i. False Conduct Report

Ofc. Tyler argues that there is no evidence that Mr. Adams engaged in First Amendment protected activity before Ofc. Tyler wrote the conduct report and the use of force reports on July

8

2, 2023. Indeed, there is no evidence in the record that Mr. Adams filed grievances against Ofc. Tyler or engaged in other First Amendment protected activity before July 2. Importantly, the physical and verbal altercation leading to the conduct report is not protected by the First Amendment. An inmate's speech is not protected if it is disruptive or confrontational; for example, "back talk" is not protected speech. *Whitfield v. Spiller*, 76 F.4th 698, 708 (7th Cir. 2023) (citing *Watkins v. Kasper*, 599 F.3d 791, 798–99 (7th Cir. 2010); *Kervin v. Barnes*, 787 F.3d 833, 835 (7th Cir. 2015)). Therefore, a reasonable jury has no basis for finding that Mr. Adams engaged in First Amendment activity leading up to the filing of the allegedly false conduct report.

### ii. Retaliation after Grievances

Ofc. Tyler does not dispute that Mr. Adams's grievance is protected by the First Amendment. Dkt. 51 at 7–8. Instead, Ofc. Tyler argues that there is no evidence that he was motivated to retaliate against Mr. Adams because of the grievance. Ofc. Tyler is correct. There is no evidence in the record that he knew about Mr. Adams's July 10 grievance or that he communicated with Mr. Adams after the July 2 altercation. *See Stagman v. Ryan*, 176 F.3d 986, 999–1000 (7th Cir. 1999) ("Allegedly protected speech cannot be proven to motivate retaliation, if there is no evidence that the defendants knew of the protected speech."). Ofc. Tyler wrote the conduct report and the use of force report the same day as the incident—July 2. Mr. Adams did not file his grievance until July 10. Furthermore, aside from writing the initial conduct report, there is no evidence that Ofc. Tyler was involved with the disciplinary hearing in September. Indeed, Ofc. Tyler had already moved to another facility by the time the hearing took place. As such, Mr. Adams has not provided any evidence that a reasonable jury could use to infer that Ofc. Tyler retaliated against him for filing the grievance.

Thus, the court **GRANTS** Ofc. Tyler's motion for summary judgment on the First Amendment claim. Mr. Adams is the nonmoving party, so he receives "the benefit of conflicting evidence and reasonable inferences." *Stockton v. Milwaukee County*, 44 F.4th 605, 614 (7th Cir. 2022). That said, he must "produce evidence sufficient to establish [the] element[s] essential to" his claim. *Id.*

### IV.
### Conclusion

The defendant's motion for partial summary judgment is **GRANTED IN PART AND DENIED IN PART**. Dkt. [49]. The motion is **GRANTED** as to the plaintiff's First Amendment claim and **DENIED** as to his Eighth Amendment claim. The plaintiff's Eighth Amendment excessive force claim against the defendant will proceed to be resolved through settlement or trial.

The court reconsiders its previous denial of the plaintiff's motion to appoint counsel, dkt. [55]. This motion is now **GRANTED**. The court will attempt to recruit counsel to represent the plaintiff through final judgment. Once counsel has been recruited, **the Magistrate Judge is asked** to schedule a telephonic status conference to discuss further proceedings.

**IT IS SO ORDERED.**

Date: 2/12/2026

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distribution:

DEMARKUS ADAMS
230061
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Inmate Mail/Parcels
4490 West Reformatory Road
PENDLETON, IN 46064

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com


Magistrate Judge Mario Garcia